**HENRIK MANNERFRID, INC.,**
**Plaintiff,**

v.

**Paul A. TEEGARDEN and Indiana Construction Company, Inc., Defendants.**

United States District Court
S. D. New York.
Feb. 19, 1959.

Strasser, Spiegelberg, Fried & Frank, New York City, for plaintiff, George A. Spiegelberg, New York City, of counsel.

Alexander & Green, New York City, for defendants, J. Kenneth Campbell, New York City, of counsel.

HERLANDS, District Judge.

Defendants have moved under Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A., for discovery and inspection of the following documents:

1. A file of correspondence between the plaintiff and one Murray Frank, not a party to this litigation; and

2. The written statement given to the Internal Revenue Service by the plaintiff corporation's president, H. Mannerfrid, which relates to an alleged agreement between plaintiff and defendants. Said agreement constitutes the subject of the underlying cause.

The litigation arises out of a transaction between the parties that the plaintiff characterizes as a joint venture and that the defendants claim was a buyer-seller arrangement. Plaintiff charges that defendants realized secret profits from a sale of vehicles to third parties and that, under the alleged joint venture agreement, plaintiff is entitled to, and now seeks, one-half of the alleged secret profits.

For the reasons set forth in this opinion, defendants' motion is granted in all respects. Plaintiff is ordered to produce and permit the defendants to copy the aforementioned documents.

## I.

Murray Frank supplied trucks to the defendants. Defendants assert that Frank had knowledge of the transactions in dispute and that he had knowledge of the fact that defendants offered plaintiff an opportunity to participate in the deal that allegedly resulted in secret profits. In 1953 Frank, using defendants' letterhead, wrote to plaintiff claiming that plaintiff owed Frank commissions for services rendered in connection with an alleged purchase in 1947 by plaintiff of trucks. Defendants seek to examine the correspondence for information on Frank's knowledge of the purported offer or any of the transactions in dispute and for any statements by plaintiff concerning the purported offer. Defendants have tried, but they have been unable to locate Frank to take his deposition or have him testify.

Paul A. Teegarden (one of the defendants) swears that, although the Frank letters may have been written on the stationery of "Paul A. Teegarden, Inc.," he has searched through his files and the files on Paul A. Teegarden, Inc., but he has been unable to find any copies of the Frank correspondence in them or in

any other files in his possession. Furthermore, Teegarden did not provide his attorneys with any copies of the correspondence.

Although the Frank letters were written five years after the event, they are not remote since they relate to the period when the alleged transaction occurred. These letters may shed light on the transactions and/or any admissions that the plaintiff made therein relating to any of the facts or agreements involved. Therefore, they are relevant to the subject matter involved in the pending action.

Relevancy, in the administration of discovery proceedings, must be "given a broad and liberal application under Rule 26, and the same liberty should be exercised under Rule 34." 4 Moore's Federal Practice, Section 34.10, at page 2458.

Defendants have shown "good cause" in seeking documents in plaintiff's possession that defendants do not have and that may contain relevant evidence otherwise unavailable. 4 Moore's Federal Practice, Section 34.08, at pages 2249–2250; Connecticut Mutual Life Insurance Co. v. Shields, D.C.S.D.N.Y.1955, 17 F.R.D. 273, 277.

## II.

■ As to the statement made by Mannerfrid (president of the plaintiff-corporation) to the Internal Revenue Service, the following facts are undisputed. Upon the taking of the deposition of Mannerfrid, it appeared that in 1953, he gave the Internal Revenue Service a written statement which related to the agreement in dispute here. Evidently, Mannerfrid orally answered questions about the defendants' business activities. The statement sought in this motion is a transcript of his answers to the Internal Revenue Service.

Plaintiff vigorously urges that the "informer" privilege that protects such communications has been preserved. It is argued in behalf of the plaintiff that, at the taking of his deposition, Mannerfrid refused to divulge whether or not he had given any statement to the Internal Revenue Service until his attorney "had duly noted an objection to the question." After the objection was noted, Mannerfrid did, in fact, admit that he gave the Internal Revenue Service a statement. The affidavits submitted herein on the present motion by plaintiff and defendants so state.

Recently, the Supreme Court reviewed the law applicable to the so-called informer's privilege. Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 627, 1 L.Ed.2d 639. Roviaro was convicted for knowingly possessing and transporting narcotics imported unlawfully (21 U.S.C.A. section 174). The trial court had sustained the Government's repeated refusal to reveal an informer's identity to the defendant, although the informer had participated in the illegal activity with the defendant. In reversing the conviction, the Court expounded the law governing the informer's privilege.

· The principles announced (353 U.S. at page 59–60, 77 S.Ct. at page 627) are dispositive of the plaintiff's claim of privilege in the present case.

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. Scher v. United States, 305 U.S. 251, 254, 59 S.Ct. 174, 176, 83 L.Ed. 151; In re Quarles, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080; Vogel v. Gruaz, 110 U.S. 311, 316, 4 S.Ct. 12, 14, 28 L.Ed. 158. \* \* \*

"The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will

not tend to reveal the identity of an informer, the contents are not privileged. *Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable."* (Emphasis supplied.)

The position taken by the Court in Roviaro articulates the views expressed by the modern authorities and commentators who have considered the problem: A.L.I., Model Code of Evidence, Rule 230 (1942); National Conference of Commissioners on Uniform State Laws, Uniform Rules of Evidence, Rule 36 (1953); VIII Wigmore, Evidence (3rd ed. 1940), section 2374(f)(1)(2); Carrow, Governmental Nondisclosure in Judicial Proceedings, 107 U.Pa.L.R. 166, 179–181 (1958).

Our Court of Appeals has applied the same limitation on the privilege announced in Roviaro to an analogous situation in which the Government sought to assert the "state secrets" privilege to bar a suit. Halpern v. United States, 2 Cir., 1958, 258 F.2d 36, 44. There, an inventor sued to recover damages resulting from a secrecy order imposed on his invention and compensation for its use by the United States. The Government moved to dismiss or stay the action during the pendency of the secrecy order. A dismissal of the complaint was reversed and the cause remanded to the district court. Judge Waterman, for a unanimous court, said (at page 44):

"Finally, the scope of the privilege of the United States with respect to state secrets, like its similar privilege to withhold the identity of confidential informants, 'is limited by its underlying purpose.' Roviaro v. United States, 1957, 353 U. S. 53, 60, 77 S.Ct. 623, 627, 1 L.Ed. 2d 639. Just as the informer's privilege is no longer applicable when the identity of the informer has been disclosed to those who would have cause to resent the communication, Roviaro v. United States, supra, so the privilege relating to state secrets is inapplicable when disclosure to court personnel in an *in camera* proceeding will not make the information public or endanger the national security."

To the extent that they state a broad or unlimited scope for the privilege, the older cases on which plaintiff relies are not in accord with the principles set forth in Roviaro, and they must be considered as no longer controlling. Thus, when the Supreme Court cited In re Quarles and Vogel v. Gruaz in the portion of the opinion quoted above, it was only for the proposition that the informer's privilege is in fact the Government's privilege to refuse to reveal the identity of informers. The suggestion in these nineteenth century cases that the *communication* may be absolutely privileged was implicitly rejected by the Supreme Court. The Supreme Court directly cites (footnote 7, at page 60 of 353 U.S. at page 627 of 77 S.Ct. Wigmore's contention that the privilege applies only to the *identity* of the informant, but the Supreme Court concludes its footnote with:

"But cf. In re Quarles, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080; Vogel v. Gruaz, 110 U.S. 311, 316, 4 S.Ct. 12, 28 L.Ed. 158."

Applying the Roviaro limitation to the facts before us, we must conclude that whatever privilege may have existed was lost. When Mannerfrid disclosed that he had given a statement to the Internal Revenue Service, and when the affidavit in opposition to this motion was filed, the informant's identity was revealed beyond recall. The "underlying purpose" (Roviaro, supra, 353 U.S. at page 60 at page 627 of 77 S.Ct.) of the privilege was thus frustrated, since the identity of the informant had been re-

vealed to those who would have cause to resent the communication.

Only the identity of the informer is protected by the privilege. The secrecy of the identity can be preserved only by not revealing it. Thus, plaintiff's attempt to preserve the privileged nature of the communication was ineffectual. Other considerations developed in this general area of the law relating to pretrial discovery and testimonial privilege point to the result reached here. Fairness to the opposition may require a plaintiff to forego the protection that the law will ordinarily afford to one who has not instituted a lawsuit. In Roviaro, the Supreme Court further limited the applicability of the informer's privilege (at page 60 of 353 U.S., at page 628 of 77 S.Ct.):

> "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, *or is essential to a fair determination of a cause*, the privilege must give way." (Emphasis supplied.)

Although this limitation may not be strictly applicable where it is the Government's privilege that is being asserted and the Government is not a party to the litigation, the rationale of "fairness" has been applied to a situation in which plaintiff seeks to assert a personal privilege to prevent the discovery of relevant information. Independent Productions Corp. v. Loew's, D.C.S.D.N.Y. 1958, 22 F.R.D. 266, 276–277. And in still another area, the Second Circuit refused to accept a newspaperwoman's assertion of an alleged testimonial privilege (reporter-informant) as justification for a refusal to reveal the source of an alleged defamatory remark in pretrial proceedings and upheld a citation for criminal contempt entered against the reporter. Circuit Judge (now Mr. Justice) Stewart pointed out that withholding relevant evidence is an extraordinary exception to the general duty to testify. Garland v. Torre, 2 Cir., 1958, 259 F.2d 545, 550, certiorari denied 1958, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed. 2d 231.

The testimonial privileges and incompetencies of the common law have seen a continuing shrinkage. Not that the courts are callous to the protection of the informer. Recently, the New York Court of Appeals recognized a governmental duty to afford an informer protection from threatened harm. Schuster v. City of New York, 5 N.Y.2d 75, 180 N.Y.S.2d 265, 154 N.E.2d 534 (Nov. 16, 1958). However, the informer's shadow over litigation often forces courts to make hard judgments in reconciling basic and conflicting social values. Protection of the channel of information flowing to the Government must be balanced against full disclosure and the ascertainment of truth through the agency of pre-trial discovery and inspection. Carrow, Governmental Nondisclosure in Judicial Proceedings, supra, at page 180. Instead of erecting barriers to what may be relevant material, the trend of the law is to regard the ascertainment of truth its highest duty and often overriding concern. On the facts before us, Dean Wigmore has wisely counseled [VIII Wigmore section 2374(f)(2), at p. 755]:

> "(2) If the identity of the informer is *admitted or known*, then there is no reason for pretended concealment, and the privilege of secrecy would be an artificial obstacle of proof." (Emphasis in original.)

Motion granted. Settle order on notice.