Fred B. BLACK, Jr., Plaintiff,

v.

**SHERATON CORPORATION OF AMER-
ICA,** Washington Sheraton Corpora-
tion and United States of America, De-
fendants.

Civ. A. No. 440-67.

United States District Court
District of Columbia.

July 25, 1969.

Gerald S. Rourke, Welch & Morgan, Washington, D. C., for plaintiff.

Peter R. Sherman, Smollar, Kuder & Sherman, Robert E. Anderson, Collins, Anderson, Ahern, Quinn & Wyland, Washington, D. C., for defendants Sheraton Corporation of America and Washington Sheraton Corporation.

Neil R. Peterson, Atty., Dept. of Justice, Washington, D. C., for defendant United States.

## OPINION

SIRICA, District Judge.

The subject matter of this litigation is the electronic surveillance by the United States of a suite of rooms in the Sheraton Carlton Hotel in Washington, D. C. Plaintiff is suing the United States, Sheraton Corporation of America, and the Washington Sheraton Corporation for trespass and invasion of privacy which allegedly resulted from the eavesdropping on conversations in the suite.

Plaintiff served a notice of deposition[1] and commenced taking the deposition of certain agents of the United States. During the course of his deposition, Edward Pennypacker, an agent of the Federal Bureau of Investigation, refused to answer certain questions on the ground that they would tend to disclose the identity of a confidential informer or informers of the United States. The questions posed by the plaintiff were whether the FBI contacted anyone at the Sheraton Carlton Hotel in connection with its alleged unlawful surveillance of plaintiff's suite therein and, if so, who that person was.

Plaintiff has moved this Court to compel an answer to the above questions pursuant to Rule 37(a) of the Federal Rules of Civil Procedure.

Plaintiff has also moved the Court under Rule 34 of the Federal Rules of Civil Procedure to order the United States to produce for inspection and copying by the plaintiff certain documents alleged to be relevant to plaintiff's cause of action.

Defendant United States has moved for a protective order pursuant to the provisions of Rule 30(b) limiting the scope of the deposition of Edward Pennypacker and any other agent of the Federal Bureau of Investigation during the course of this action. Defendant United States also moves under Rules 34 and 30(b) for an order limiting the scope of the areas concerning which records must be produced in this action.

This Court has held an extensive hearing on these matters and has considered memoranda in support of and in opposition to each of the motions. The Court also conducted an *in camera* inspection of certain documents presented to it by the United States concerning the role of the informer or informers in the surveillance. *See* Westinghouse Elec. Corp. v. City of Burlington, 122 U.S.App.D.C. 65, 73, 351 F.2d 762, 770 (1965).

---

1. Fed.R.Civ.P. 26(a).

I will discuss seriatim each of the motions before the Court.

## I. MOTION TO COMPEL AN ANSWER TO QUESTIONS

The threshold question in deciding whether or not the government should be compelled to disclose the identity of an informer, concerns the definition of an informer. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the leading case in the informer privilege area presented the following definition of the privilege: "* * * [T]he Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." 353 U.S. at 59, 77 S.Ct. at 627.

The actual scope of factual situations in which the privilege has been invoked, however, is significantly broader. It has been held to apply not only to persons who supply information to the authorities but also to those who cooperate with or assist a law enforcement agency. In Roviaro, for instance, the informer was the transferee of the narcotics. He was the sole participant in the transaction other than the accused. Yet there was no question about his status as an informer.

In Howard v. Allgood, 272 F.Supp. 381 (E.D.La.1967), the informer knew nothing of the crimes that had been committed and had no knowledge of the reason for the investigation. His sole role in the affair was to let the police know whether or not the petitioner was at home before they attempted to confront him. The Court held that while the informer was not an "informer" insofar as the crime or any element thereof was concerned, it was not error for the government to refuse to disclose his identity. The district judge thus recognized the principle that citizens who assist the police on a confidential basis should remain anonymous.

In Wilson v. United States, 59 F.2d 390 (3d Cir. 1932), a citizen furnished a Prohibition Act officer with a key to premises which contained illegal liquor. Although holding that disclosure was proper since the identity of the informer was necessary to determine the defendant's guilt or innocence, the court naturally classified the person who helped the officer as an informer. The informer's privilege concept, therefore, must be viewed from a broader perspective to include more than mere "information-givers." Courts have consistently, though often tacitly done this in the past. See Gilmore v. United States, 256 F.2d 565 (5th Cir. 1958); United States v. Conforti, 200 F.2d 365 (7th Cir. 1953).

Rather than to limit the class to whom the privilege is generally applicable, the better approach is to weigh the nature of the informer's role in determining whether disclosure is appropriate under the standards established by the Roviaro decision. The public interest extends beyond merely encouraging members of the public to convey information to the authorities and includes rendering whatever assistance is necessary to achieve effective law enforcement. This duty goes back to more primitive days in our history when citizens were required to participate in the establishment of a posse comitatus. See In re Quarles, 158 U.S. 532, 535–536, 15 S.Ct. 959, 39 L.Ed. 1080 (1894).

Applying the above to the facts of this case, it is my view that the person or persons who assisted the government in the eavesdropping of plaintiff's suite were informers within the accepted legal meaning of that word.

Having established that they were informers, it is incumbent upon the Court to determine whether their identity should remain undisclosed.

There can be no disputing the fact that the aid and assistance of citizens and corporations are necessary for the

effective administration of justice.[2] It is the primary purpose of the informer's privilege to facilitate this private cooperation in law enforcement by encouraging informers to provide pertinent information to the government without fear of public disclosure, retaliation or social disfavor.

Originally, the informer's privilege was a broadly conceived evidentiary rule insulating persons who assisted the authorities from disclosure. *See* In re Quarles, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080 (1894); Vogel v. Gruaz, 110 U.S. 311, 4 S.Ct. 12, 28 L.Ed. 158 (1884). It assumed a quasi-absolute breadth until 1957 when the Supreme Court ruled in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.

*Id.* at 62, 77 S.Ct. at 628.

In a subsequent case the United States Court of Appeals for the District of Columbia construed *Roviaro* as introducing a fairness concept, making more flexible what was once a mechanical rule. Westinghouse Elec. Corp. v. City of Burlington, 122 U.S.App.D.C. 65, 351 F.2d 762 (1965), on remand, 246 F. Supp. 839 (D.D.C.1965). *Westinghouse* also held the *Roviaro* restructuring of the informer's privilege to be applicable in civil cases. *Id.* at 72–73, 351 F.2d at 769–770.

This formulation of the informer's privilege, however, has not been applied without difficulty.

> The testimonial privileges and incompetencies of the common law have seen a continuing shrinkage. Not that the courts are callous to the protection of informers. * * * However, the informer's shadow over litigation often forces courts to make hard judgments in reconciling basic and conflicting social values.

Mannerfrid v. Teegarden, 23 F.R.D. 173, 177 (S.D.N.Y.1959).

A majority of the cases considering the disclosure problem since *Roviaro* have involved criminal defendants. *See, e.g.,* McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); Toohey v. United States, 404 F.2d 907 (9th Cir. 1968); Hurst v. United States, 344 F.2d 327 (9th Cir. 1965). The informer's often crucial role in the facts at issue in criminal cases and the serious question of defendant's guilt or innocence operate strongly to prompt disclosure of the informer. But even in this area, where defendant's argument for disclosure is strongest, the courts have been reluctant to create broad disclosure rules. In McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), defendant sought to create a constitutional right to discovery of the informer's identity. His argument that the due process

2. In an affidavit filed herein, Attorney General John N. Mitchell commented that "confidential informants are the single most important source of information in the field of law enforcement. * * * In my judgment the damage to the public interest which would result from a disclosure of the identity of confidential informants far outweighs the plaintiff's individual interest in this action * * *." Affidavit of John N. Mitchell, Black v. Sheraton Corporation, C.A. No. 440–67 (D.D.C., filed Feb. 20, 1969) p. 2.

Cartha D. DeLoach, Assistant to the Director of the Federal Bureau of Investigation stated that confidential informers to the FBI were responsible for locating 5,864 subjects in 1967 and during the 1965–1967 period indirectly resulted in the recovery of $33,000,000 in stolen merchandise. The locating of a subject led to his arrest in all but a very small percentage of the cases. Affidavit of Cartha D. DeLoach, Black v. Sheraton Corporation, C.A. No. 440–67 (D.D.C., filed Feb. 20, 1969) pp. 3, 4.

clause of the Fourteenth Amendment and the Sixth Amendment applicable to the states through the Fourteenth Amendment demanded disclosure in state criminal trials was dismissed by a majority of the Justices. The Court was of the view that even in cases where the informer's testimony relates to the ultimate question of the defendant's guilt, there is no absolute rule of disclosure, 386 U.S. at 311, 87 S.Ct. 1056.[3] Rather, the Court must balance the public interest in protecting the flow of confidential information to the government against the individual's right to prepare his defense, 386 U.S. at 310, 87 S.Ct. 1056, *citing* 353 U.S. at 62, 77 S.Ct. 623. The Supreme Court's reluctance in the most critical of situations has been accompanied by an even greater hesitation to order widespread disclosure "where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake." 386 U.S. at 311, 87 S.Ct. at 1062. The recently published tentative draft of the American Bar Association Project on Minimum Standards for Criminal Justice relating to Discovery and Procedure Before Trial recognizes the role of informers in effective law enforcement with the result that "only the most compelling circumstances should require pretrial disclosure of the informer's identity by the prosecution, such as constitutional requirements or the fact that the identity is going to be disclosed anyway when he becomes a witness at a trial or hearing * * *."[4]

In the criminal area, the *Roviaro* doctrine, while broadening the discovery of informers, has been applied with great caution.

The Supreme Court's decision in *Roviaro*, although directed toward procedures in a criminal prosecution, has been cited as authority in civil cases. In Westinghouse Elec. Corp. v. City of Burlington, 122 U.S.App.D.C. 65, 351 F.2d 762 (1965), the United States Court of Appeals for the District of Columbia unequivocally affirmed its applicability in civil cases. The Court held that "[t]here is no logical reason to set up two different privileges, one for civil and one for criminal cases." *Id.* at 72, 351 F.2d at 769. "The *Roviaro* balance should be struck in each case, civil and criminal, in deciding whether disclosure 'is essential to a fair determination of a cause'." *Id., quoting* 353 U.S. at 61, 77 S.Ct. 623, 628. *See*, Mitchell v. Bass, 252 F.2d 513 (8th Cir. 1958); Mannerfrid v. Teegarden, 23 F.R.D. 173 (S.D. N.Y.1959).

Although *Roviaro* has been said to be generally applicable to civil suits, disclosure has been ordered in two types of cases: (1) in punitive civil suits; (2) in cases where the informer or the government has waived the privilege. Punitive civil actions are suits brought by private citizens or by the government under authority of a statute to punish noncompliance or to compensate those who suffered injury because of defendant's failure to abide by the statute's terms. Two of the more common civil punitive actions are those brought under the anti-trust laws, 15 U.S.C. § 15 (1964), or the Fair Labor Standards Act, 29 U.S.C. § 216 (1964). The statutes authorizing these punitive actions make the private plaintiffs, prosecutors or private attorneys general. The judgment is punitive as well as compensatory and is designed to create a deterrent effect as well as compensate the injured party.

3. In *Roviaro* the informer was central to circumstances surrounding the illegal act in that he might well have established the defense of entrapment. "He might have thrown doubt upon * * * [defendant's] identity or on the identity of the package." 353 U.S. at 64, 77 S.Ct. at 629.

4. American Bar Association Minimum Standards for Criminal Justice relating to Discovery and Procedure Before Trial (1969), § 2.6, P. 92. See also Preliminary Draft of Proposed Rules of Evidence for the United States District Courts & Magistrates Rule 5–10, 46 F.R.D. 161, 276 (1969).

The decision of the United States District Court for the Northern District of Illinois in United States v. Swift & Co., 24 F.R.D. 280 (1959), illustrates the post-*Roviaro* approach in punitive civil suits. *Swift & Co.* sought to modify a consent judgment entered against them in a prior anti-trust proceeding. In furtherance of this motion they moved for discovery of certain questionnaires concerning market conditions in the possession of the respondent United States. Rejecting respondent's claim of informer's privilege, the Court held that *Roviaro* not only abolished any claim of absolute privilege, *quoting* 353 U.S. at p. 62, 77 S.Ct. 623, but also established a balancing of interests to determine whether disclosure should be ordered, *quoting Id.* The Court finding that the requested information did not involve an unlawful act and was not the kind to excite resentment, ordered disclosure.

In Boeing Airplane Co. v. Coggeshall, 108 U.S.App.D.C. 106, 280 F.2d 654 (1960), Boeing requested certain documents in possession of the United States Renegotiation Board for use in a Tax Court proceeding to determine whether Boeing had made excess profits on a government contract. 50 U.S.C.App. § 1218 (1964). The Court of Appeals rejected the Renegotiation Board's defense on the ground of informer's privilege, and held that Boeing should have access to the Board's factual and investigatory reports. The Court found *inter alia* that disclosure would not seriously impair the Renegotiation Board's sources of information, and to the extent it did it was "insignificant compared to the importance of this information to the Tax Court * * *." 108 U.S.App.D.C. at 113, 280 F.2d at 661. See Mitchell v. Bass, 252 F.2d 513 (8th Cir. 1962).

A case which illustrates both the "punitive action" and "waiver" exceptions to informer's privilege is Westinghouse Elec. Corp. v. City of Burlington, 122 U.S.App.D.C. 65, 351 F.2d 762 (1965). In Westinghouse more than 1800 treble damage actions had been brought in the federal courts against several manufacturers of electrical equipment, of which Westinghouse was one. In defense of these suits, Westinghouse sought to prove by discovery that the plaintiffs knew of the illegal acts more than four years before they brought suit. The reason for this requested discovery was that such knowledge, if there was any, might help establish a defense to the claims of plaintiff-appellees that they should recover damages for transactions beyond the four-year period of limitations because the defendants had fraudulently concealed the alleged conspiracy and thereby tolled the running of the statute of limitations. 15 U.S.C. § 15b.[5]

In an attempt to establish this defense the defendants requested every letter, memorandum, or other written communication, and all notes, memoranda or other records of each oral communication, during the period between January 1, 1948, and December 31, 1960, which were made or which are under the control of the Department of Justice, in which any distributor of electricity, group of distributors or engineering consultant or firm thereof, or any officer, agent, or employee of the same, complained, alleged, suggested, or otherwise asserted that there may have been price fixing or other violations of the anti-trust laws in the electrical equipment industry. The Attorney General moved to quash the subpoena duces tecum on several grounds, one of which was that the documents were protected

---

5. For a more comprehensive review of the electrical equipment cases, see Report of the Co-Ordinating Committee for Multiple Litigation of the United States District Courts, a subcommittee of the Committee on Pretrial Procedure and Practice of the Judicial Conference of the United States (Sept. 1, 1965); Neal and Goldberg, The Electrical Equipment Anti-trust Cases: Novel Judicial Administration, 50 A.B. A.J. 621 (1964).

from disclosure by the informer's privilege. The District Court granted the government's motion to quash the subpoena on the informer's privilege and oppressiveness grounds. Defendants appealed and the Court of Appeals reversed the District Court's order and remanded the case to the District Court for further proceedings consistent with the appellate court's application of the *Roviaro* doctrine to civil cases.[6] On remand the District Court allowed a limited discovery. The District Court held that "the Department of Justice must turn over to the defendants copies of, or allow the defendants to inspect, examine, and make copies of all letters, memoranda and other written communications * * * which are covered by the subpoena and which relate to complaints by persons, corporations, etc. which are, or were at any time, plaintiffs in the electrical equipment cases." 246 F.Supp. at 846. The District Court construed the Court of Appeals' decision to provide that once a complainant has filed suit, he has revealed his identity, and subjected himself to civil discovery, and that the government should not be permitted to withhold information which the plaintiffs themselves would have had to disclose. *Id.*

The waiver theory has other manifestations than the initiation of a suit. In Clark v. Pearson, 238 F.Supp. 495 (D. D.C.1965), plaintiff sued defendant for libel for an article defendant wrote charging plaintiff with graft. In the article defendant stated that he had turned certain incriminating documents over to the Department of Justice. When plaintiff sought to recover the documents the Justice Department resisted on the ground of informer's privilege. The Court ordered that the documents be turned over on the theory that by turning the documents over and then writing in his column about them he waived any right to the privilege.

In Mannerfrid v. Teegarden, 23 F.R. D. 173 (S.D.N.Y.1959), the plaintiffs admitted writing certain letters after noting an objection that the question of the letters were within the scope of the informer's privilege. The Court held that the letters must be turned over since by admitting authorship the plaintiffs had waived the protection of the privilege.

The waiver cases are reconcilable with the teachings of *Roviaro*. The latter decision created a balancing of interests test in attempting to achieve fairness in administering the privilege. Once a party admits he was an informer he no longer has any interest in anonymity. Likewise when he files suit his interest in remaining anonymous as to matters relevant to the suit disappears. It would be a breach of fairness to allow him to sue another and at the same time erect a legalistic facade of anonymity.

In criminal cases, it is necessarily the defendant, his freedom and reputation in jeopardy, who seeks discovery of an informer who may well have evidence beneficial to the defense. In the punitive civil cases the party who seeks disclosure is similarly in a defensive position defending charges brought by either the government or an individual representing the public interest.

The waiver cases represent a related but converse situation. In those cases it is not so much that the party who seeks disclosure has equities in his favor justifying the identification of the informer

6. The Court of Appeals sought to include the Westinghouse facts within both recognized exceptions to the informer's privilege. The Court found that "a treble-damage action is not wholly a private civil action. The statute permitting such actions is designed to make private parties prosecutors. The judgment is punitive as well as compensatory." 122 U.S. App.D.C. at 73, 351 F.2d at 770. The Court also held that "plaintiffs in this case should be regarded as having waived the informer's privilege as to their communications with the Government * *." *Id.*

but rather that the informer for some reason has moved without the protection of the privilege.

The matter before the Court in these motions falls within none of the aforementioned categories. It is a civil case, but the party who seeks disclosure is the plaintiff and he seeks to obtain a judgment for compensatory and punitive damages against the defendants. There is no allegation that the informers have waived their privilege; the question in its most basic form is: does fairness derived by balancing the respective interests require anonymity or disclosure.

Plaintiff maintained a suite of rooms at the hotel for ten years preceding May 1966. On May 24, 1966, defendant United States disclosed in a memorandum to the United States Supreme Court that agents of the defendant installed a spike mike listening device in the wall of plaintiff's suite and monitored conversations in defendant's room from February 7, 1963, to April 25, 1963.[7]

On February 24, 1967, plaintiff commenced the present action against the United States and the two hotel companies based upon the monitoring of his hotel rooms. Plaintiff contends that the hotel corporations participated in and acquiesced in the tortious trespass and invasion of privacy by the United States and are thereby liable to the plaintiff for compensatory and punitive damages. The plaintiff seeks to determine the identity of any informers who aided the United States in the alleged illegal eavesdropping. He contends that the identity of the informer or informers, their relationship to the hotel, and the role they played are integral to the cause of action against the hotel corporations.

Plaintiff's justification for obtaining the disclosure of the informer's identity is that plaintiff's constitutional rights have been violated by the defendant and disclosure is a prerequisite to the vindication of those rights. Plaintiff contends that "the fact that plaintiff's privacy was invaded pursuant to a policy of the government to violate the Constitution requires that the informer's privilege be denied the government here."[8] Plaintiff thus presents a two fold argument in favor of disclosure: (1) It is necessary for the presentation of his case; (2) The government is not entitled to invoke the privilege. It is helpful in an analysis of this problem to focus on these two reasons in greater detail.

The plaintiff claims that if he is denied the identity of the informer, he would be prejudiced in his attempt to vindicate his constitutional rights. Plaintiff is suing both the United States and the two corporate defendants for damages arising out of the eavesdropping. He is suing the United States for compensatory damages under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*[9] The existence or nonexistence of an informer is not important with respect to this cause of action. The government has admitted the fact of the surveillance. Plaintiff has no interest

---

7. Plaintiff was indicted in 1963 and convicted on May 5, 1964, after a jury trial of attempting to evade his 1956, 1957 and 1958 income taxes (U.S.D.C. Cr. Nos. 650–63 and 651–63). The conviction was affirmed on appeal, Black v. United States, 122 U.S.App.D.C. 347, 353 F.2d 885. (1965) and the Supreme Court denied a petition for certiorari, 384 U.S. 927, 86 S.Ct. 1444, 16 L.Ed.2d 530 (1966). Following disclosures by the Solicitor General, the Supreme Court remanded the case for a new trial, Black v. United States, 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966). Plaintiff was found not guilty on retrial July 17, 1968.

8. Plaintiff's reply to opposition of the United States to motion to compel answers, Black v. Sheraton Corp., C.A. No. 440–67 (D.D.C.1967) p. 25.

9. The suit against the United States is limited to compensatory damages since punitive damages are not recoverable against the United States, 28 U.S.C. § 2674.

in and consequently in fairness, could not demand that the government disclose the name of its informers.[10] Plaintiff's basic affirmative interest then, in obtaining disclosure is in furtherance of his suit against the two private corporations which allegedly participated in this alleged tortious and illegal act. Plaintiff's suit against the hotels may well be facilitated by disclosure of the informer's identity. The extent of his interest in the informer's identity, however, is not so readily apparent since to determine that the Court must examine plaintiff's purpose in suing the hotel corporations. As noted earlier plaintiff has stated an apparent cause of action irrespective of disclosure against the United States under the Federal Tort Claims Act. He may be compensated for any provable damages arising from the eavesdropping. He therefore has no interest in a compensatory action against the hotel since any recovery against the latter would be duplicative to the recovery against the United States. His prime interest therefore in perfecting an action against the hotel corporations is to secure a punitive judgment against them for their alleged roles in the surveillance. This is the sole affirmative interest which the plaintiff seeks to foster by disclosure of the informer's identity.

▮ "[Punitive damages] * * * are allowed and awarded as a punishment to the defendant and as a warning and example to deter him and others from committing like offenses in the future. Under this theory such damages are allowed on grounds of public policy and in the interest of society and for the public benefit, not as compensatory damages, but rather in addition to such damages." 22 Am.Jur.2d § 237 (1965)

(footnotes omitted); *see* Washington Gaslight Co. v. Lansden, 172 U.S. 534, 19 S.Ct. 296, 43 L.Ed. 543 (1899); Scott v. Donald, 165 U.S. 58, 17 S.Ct. 265, 41 L.Ed. 632 (1897). Punitive damages are allowable where a tort is aggravated by evil motive, actual malice, deliberate violence or oppression. *Id.* Plaintiff's interest in discovering the identity of the informers is to strengthen his case for punitive damages against the defendant hotel. The substantiality of this interest is questionable, especially in light of the ends customarily sought to be achieved by exemplary damages. Plaintiff has alleged an apparent cause of action against the United States for its alleged tortious conduct. Recovery and the consequent publicity may well have a deterrent effect against such tortious conduct if proven. Plaintiff, however, also seeks to discourage private individuals from joining with the government in tortious conduct. Plaintiff must recognize, however, that he is thus placing the burden on a potential informer to determine whether his assistance is tortious. If his role is determined at some future time to be tortious this potential informer must recognize that he would be liable for compensatory and punitive damages. Thus, in reality, the plaintiff desires the identity of the informer so that he may obtain a punitive judgment against the hotel and generally discourage assistance to the government by informers. Plaintiff believes that he would discourage only tortious assistance but in effect the necessity for the informer to prejudge his assistance would generally discourage cooperation.

Plaintiff has, then, what is best termed a minimal interest in discovering the identity of the informer.[11]

10. In its reply to the government's opposition to plaintiff's motion to compel answers, plaintiff, whenever he refers to the necessity for disclosure, always phrases the need in terms of his case against the corporate defendants. *See, e. g.,* plaintiff's reply, Black v. Sheraton Corp., C.A. No. 440–67 (filed Mar. 24, 1969, D.D.C.), pp. 2, 3, 19, 23.

11. Plaintiff has contended that he was the subject of an alleged tortious act perpe-

Plaintiff approached the *Roviaro* balancing alternatively. We have discussed his interest in discovery, and found it to be minimal. He also proposes that the government has no interest in protecting the identity of the informer.

■ The informer's privilege does not run to the benefit of the individual but rather is the government's privilege to protect the sources of its information and the individuals who assist it. It stems from a recognition that citizens will not come forward to assist the government if they believe their involvement might well become public, with the consequent danger of reprisals and resentment. Plaintiff's argument that there is no danger of retaliation in an individual case does not obviate the necessity for the privilege since it is the disclosure itself rather than the conditions which prompted it that inhibit citizen cooperation. In *Westinghouse* the Court of Appeals stated, "the privilege exists for the benefit of the general public, not for the benefit of the particular informer involved." Therefore, to the extent that a potential informer believes that his anonymity depends upon someone else's finding that disclosure would be dangerous to the informer he will necessarily be reluctant to give assistance.

The focus in *Roviaro* is on the plaintiff's variable need vis-a-vis the government's more or less constant need to preserve the anonymity and maintain the cooperation of its informers.

■ This is not a criminal case nor is it a punitive civil action against the petitioner in this motion. Federal courts have consistently indicated that the privilege is stronger in civil cases. *See* Bocchicchio v. Curtis Publishing Co., 203 F.Supp. 403, 407 (E.D.Pa. 1962); In re Gurnsey's Petition, 223 F. Supp. 359 (D.D.C.1963). It is especially so in this case since the plaintiff has an alleged cause of action which does not depend on the informer's disclosure.

## II. MOTION FOR DISCOVERY OF DOCUMENTS

Plaintiff's second motion before the Court is for discovery and production of documents pursuant to Rule 34 of the Federal Rules of Civil Procedure. The United States has voluntarily consented to turn over a portion of the requested documents [12] dealing with the fruits of

---

trated by the informer and his employees, and is therefore entitled to compensation for the resulting injuries. In the analogous area of governmental immunity, a cause of action is not granted to every plaintiff alleging that he was the victim of a tort perpetrated by an employee of the United States. A strong governmental interest may override plaintiff's interest in compensation. In Gregoire v. Biddle, 177 F.2d 579 (2d Cir. 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950), Judge Learned Hand commented on governmental privilege, as follows:

Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from

their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

*Id.* at 581.

Likewise in Blitz v. Boog the Court held that a state psychiatrist was immune from suit for false imprisonment arising from a report that the plaintiff was insane. Blitz v. Boog, 328 F.2d 596 (2d Cir. 1964); *See* Taylor v. Glotfelty, 201 F.2d 51 (6th Cir. 1952).

In this case where the strong governmental interest with respect to informers is directly involved, the words of Judge Hand have persuasive significance.

12. The United States has voluntarily consented to turn over upon court order the following documents (1) the logs of the

the surveillance. An order requiring this limited discovery was filed on May 14, 1969.

The contested portion of the motion involves requests for information about the planning, execution and termination of the surveillance.[13]

 Rule 34 in essence provides that upon motion of a party showing good cause, another party may be ordered to produce for inspection and copying any nonprivileged documents or tangible objects in his possession which constitute or contain evidence relating to any of the matters within the scope of discovery established by Rule 26(b). The basic prerequisite to discovery

which the moving party, the plaintiff in this case, must satisfy [14] is that there be good cause for the production of the items he seeks. "Good cause" is ordinarily satisfied by a factual allegation showing that the requested documents are necessary to the establishment of the movant's claim or that denial of production would cause the moving party "hardship or injustice." 4 J. Moore, Federal Practice, par. 34.08 at 2478 (2 ed. 1968). See Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); Boeing Airplane Co. v. Coggeshall, 108 U.S.App.D.C. 106, 280 F.2d 654 (1960); Groover, Christie & Merritt v. LoBianco, 119 U.S.App.D.C. 50,

---

microphone surveillance (2) any portion of an airtel containing information from the surveillance (3) portions of reports containing information from the surveillance.

13. Plaintiff's motion for discovery requests in part:

2. All communications, reports, memoranda, notes, records, record entries, writings and documents of any sort:

(a) containing or relating to any and all requests for permission for, or approval of, the installation of the microphone involved in this surveillance.

(b) containing or relating to any and all authorizations or grants of approval for the installation of said microphone.

(c) concerning or relating to preparations for the installation of said microphone and the conducting of said surveillance, including but not limited to any arrangements with hotel personnel, renting of the rooms involved, obtaining the floor plan of plaintiff's rooms, and obtaining the necessary equipment and instruments.

(d) concerning or relating to the installation of said microphone and the conducting of said surveillance.

(e) concerning or relating to the transfer of the listening station from rooms 436–434 to room 432, and any and all preparations therefor.

(f) concerning or relating to the termination of the surveillance of plaintiff's suite.

(g) concerning or relating to the wiring between rooms 436–434 and room 432 and the apparatus connected therewith, including but not limited to all references to the leaving in place or removal thereof.

(h) concerning or relating to the microphone installed in the wall of plaintiff's suite and the apparatus connected therewith, including but not limited to references to the leaving in place or the removal thereof.

(i) authorizing, relating to, or reflecting the payment of funds for the rental of rooms 436–434 and/or room 432 at the Sheraton-Carlton Hotel in connection with the microphone surveillance of plaintiff's suite.

(j) authorizing, relating to, or reflecting the payment of any funds to or on behalf of or for the benefit of or in connection with the use of any confidential contact at the Sheraton-Carlton Hotel in connection with the microphone surveillance of plaintiff's suite.

(k) requesting, authorizing or instructing the Washington Field Office of the FBI to undertake an investigation into the activities of the plaintiff, or on the basis of which such investigation was undertaken.

(l) concerning or relating to any confidential inside contact at the Sheraton-Carlton Hotel utilized in any way in connection with the microphone surveillance of plaintiff's suite.

14. That the burden of satisfying the prerequisites to discovery is on the moving party has been well established in this Circuit. See Boeing Airplane Co. v. Coggeshall, 108 U.S.App.D.C. 106, 280 F.2d 654 (1960); Von Der Heydt v. Rogers, 102 U.S.App.D.C. 114, 251 F.2d 17 (1958).

336 F.2d 969 (1964). The movant also has the obligation to establish the materiality and relevance of the documents which production he seeks.[15] Good cause, however, implies a greater showing of need than relevance and materiality. If this were not so the "good cause" requirement which appears in only Rules 34 and 35 would be meaningless. Schlagenhauf v. Holder, 379 U.S. 104, 118, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). It is the opinion of this Court that vis-a-vis the United States, the plaintiff has not established sufficient good cause to order disclosure.

This is a relatively unique case. The plaintiff has alleged that agents of the United States in the course of their employment did wrongfully trespass upon the plaintiff's suite at the Sheraton Carlton Hotel and did wrongfully invade the privacy and constitutional rights of the plaintiff by eavesdropping on conversations in his suite and thereby violated the Federal Tort Claims Act, 28 U.S.C. § 1346(b), 2671 *et seq.*

In answer thereto the United States admits that the electronic surveillance which is the subject of this action was disclosed in the 'Supreme Court in June 1966, and that the plaintiff was not at any time prior thereto informed by this defendant that the electronic surveillance had occurred. Answer of United States, Black v. Sheraton Corporation, C.A. No. 440–67, (D. D.C. Sept. 23, 1968) p. 2 (hereinafter cited as "Answer").

The defendant also admitted in its answer that the eavesdropping was authorized and that the employees of the United States conducting the investigation acted within the scope of their employment. Answer, p. 3.[16] In subsequent deposition hearings the United States described in detail how the eavesdropping was accomplished.[17]

In light of this admission of the pertinent facts at issue the plaintiff has not alleged sufficient need to justify his discovery relative to his suit against the United States. He has not made a sufficient showing as to why he needs the additional information in light of the

---

15. Hartford Nat'l Bank & Trust Co. v. E. F. Drew & Co., 13 F.R.D. 127 (D.Del. 1952); William A. Meier Glass Co. v. Anchor Hocking Glass Corp., 11 F.R.D. 487 (W.D.Pa.1951); Marzo v. Moore-McCormack Lines, 7 F.R.D. 378 (E.D. N.Y.1945).

16. In its answer the United States has admitted that under a Department of Justice practice in effect during the period of 1963 to 1965, the Director of the Federal Bureau of Investigation was given authority to approve the installation of devices such as the spike mike in question, for intelligence purposes when required in the interest of internal security or national safety. The defendant has admitted that acting on the basis of Departmental authorization, the Director approved the installation in the instant case. The defendant further admits that employees within the scope of their employment conducted the surveillance of plaintiff's suite by placing a listening device in a common wall between plaintiff's suite and an adjoining room which penetrated one quarter of an inch into plaintiff's side of the common wall. Answer, p. 3.

17. Special Agent Philip M. King of the Federal Bureau of Investigation was deposed by the plaintiff on January 3, 1969. He was one of the agents assigned to the Black surveillance. Agent King testified at length about the planning which led to the installation of the eavesdropping device, its installation into the common wall, and the details of its operation. See deposition of Philip M. King, Black v. Sheraton Corp., C.A. No. 440–67, (D.D.C., filed Jan. 3, 1969), pp. 6–13 (planning); 15–20 (installation); 20–31 (operation).

Special Agent Edward Pennypacker of the Federal Bureau of Investigation was likewise deposed by the plaintiff and gave information concerning the authorization planning, maintenance and termination of the eavesdropping. See deposition of Edward Pennypacker, Black v. Sheraton Corp., C.A. No. 440–67, (D.D.C., filed Jan. 3, 1969), pp. 26–27, 30, 35, 36 (authorization for surveillance); 27, 30 (planning); 38, 43, 44, 48, 49, 60 (monitoring procedures); 50 (termination).

facts disclosed by defendant United States.

The United States has submitted to the Court copies of papers on file with the United States District Court for the Southern District of Florida (Miami Division) in the case of Roberta Feiner v. United States, No. 67–611–Civ–CA (S. D.Fla., filed June 12, 1969). The facts of that case as alleged in the papers of the parties are similar to the present case. The United States eavesdropped on conversations in plaintiff's home; voluntarily disclosed the eavesdropping, and was sued by the plaintiff for trespass. Plaintiff sought to discover by deposition information concerning details of the installation and maintenance of the bug. The questions plaintiff asked in *Feiner* were markedly similar in subject matter to the documents plaintiff seeks to discover in this action, and the United States had made admissions similar to those in this case. Judge Clyde Atkins denied plaintiff's motion for discovery. The United States had presented two grounds in opposition to the motion. The first and primary one was that in light of the defendant's admissions, the questions were irrelevant. The other ground was national security privilege. While the actual order is unclear as to which ground the Court relied on, the government alleged in a covering letter, filed herein, that irrelevancy was Judge Atkins' ground for his decision.

While *Feiner* is factually distinguishable from the present case, it is authority for the proposition that the government's rather detailed admission of the facts of the eavesdropping can render further factual discovery irrelevant and without good cause.

Plaintiff contends, however, that this discovery, with special emphasis on sections 2(j) & (*1*) of the motion,[18] is crucial to his cause of action against the corporate defendants. In his affidavit

filed herein March 24, 1969, in support of his motion, plaintiff's attorney says, "In particular it is believed that there are or may be documents relating to the existence, identity, and/or activities of an employee or employees or other person or persons connected with the Sheraton Carlton Hotel or the Sheraton defendants who were involved in the eavesdropping on plaintiff's suite." Affidavit of Gerald S. Rourke, Black v. Sheraton Corp., C.A. No. 440–67, (D.D.C., filed Mar. 24, 1969) pp. 1, 2.

Rule 34 of the Federal Rules of Civil Procedure limits discovery to those documents which are not privileged. The question, then, as it was in the previous motion, is, whether the documents plaintiff seeks to discover are privileged. For the same reasons this Court gave in response to the motion to compel answers, the identity of the alleged informers is protected by the informer's privilege. Therefore, any documents which would tend to disclose his identity are also privileged.

What are the documents for which the plaintiff has need against the corporate defendants? Obviously, they do not need the documents alleging the facts of the alleged tort since the government has admitted the facts. Rather, they seek documents which might somehow connect the informer to the corporate defendants. Since these documents would certainly tend to identify the informer, this Court holds that they are not discoverable. Hence, in neither its suit against the United States nor the corporate defendants has the plaintiff satisfied the prerequisites to discovery of the documents requested by its motion.

### III. MOTION FOR A PROTECTIVE ORDER

Defendant has moved this Court to issue a protective order under Rule 30(b) limiting the scope of the plaintiff's dep-

18. *See* note 13, *supra*.

osition of defendant's employees, and plaintiff's request for disclosure of documents in the possession of the defendant United States. This Court is of the view that its orders in the two preceding motions will effectively limit plaintiff's discovery to matters relevant, nonprivileged and necessary, and that a formal protective order at this time would be premature and unnecessary.

Counsel will submit an appropriate order.