Sophie BACKOS et al., Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 77–70615.

United States District Court, E. D. Michigan, S. D.

June 29, 1979.

Stanley R. Kirk, George G. Newman, Detroit, Mich., for plaintiff.

Robert G. Nath, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant.

## OPINION

FEIKENS, District Judge.

The facts of this case are set forth in my opinion of December 20, 1978 and will not be detailed further except as necessary to elucidate the claims presently before me.

Plaintiffs sue for the refund of $5,819.99 paid by Backos to remove a tax lien which was levied against her by the federal government to satisfy excise wagering tax liability under 26 U.S.C. § 4401(a). Backos claims she was not engaged in wagering. The government disagrees and counterclaims for over one million dollars in wagering taxes. Backos claims alternatively that this amount is excessive.

On April 19, 1979 the government served its third set of interrogatories on plaintiffs. The questions ask for details of plaintiffs' operation of a "mutuels combine" between 1970 and 1973. Plaintiffs have refused to answer these questions, claiming their Fifth Amendment right not to incriminate themselves. Plaintiffs did, however, answer two earlier sets of interrogatories.

The government first moves to compel answers to the interrogatories. Second, it being agreed that the plaintiffs will refuse to answer, the government moves for sanctions. The sanctions sought include an order that the matters inquired into be established in the government's favor, or, in the alternative, an order forbidding the plaintiffs from introducing any proof as to those subjects. Third, on the basis of this order, the government moves for summary judgment, presumably as to both plaintiff's claim and its own counterclaim. F.R.C.P. 37(b)(2).

■ My first observation is that the government seeks, in effect, a dismissal of the complaint, as well as judgment on its counterclaim. I find cases dealing with dismissal as a sanction for failing to make discovery equally applicable to the summary judgment request.

■ As a general rule, courts should not dismiss an action (or, by analogy, grant summary judgment against a litigant) for failure to make discovery. Because dismissal is a severe sanction, its use must be tempered. *Campbell v. Gerrans,* 592 F.2d 1054, 1058 (9th Cir. 1979); *Trans World Airlines v. Hughes,* 332 F.2d 602, 614 (2nd Cir.), *cert. denied,* 379 U.S. 912, 85 S.Ct. 261, 13 L.Ed.2d 184 (1969). This rule is at least partly bottomed on the notion that Rule 37 has a constitutional dimension: no person should be deprived of his property without due process of law. *Societe Internationale v. Rogers,* 357 U.S. 197, 208, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); *Flaks v. Koegel,* 504 F.2d 702, 708 (2nd Cir. 1974). Generally, an element of wilfulness is required before dismissal will be entered against a party. *Stanziale v. First Nat. City Bank,* 74 F.R.D. 557, 559 & *n.* 2 (S.D.N.Y.1977); 4A Moore's Federal Practice ¶ 37.03[2.1] at 37–55; *cf. National Hockey League v. Met. Hockey Club,* 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1975) (Rule 37(b)(2) dismissal upheld for "wilful failure" to answer and "callous disregard" of court directives).

■ With these principles in mind, courts have often refused to dismiss an action for failing to answer on Fifth Amendment grounds, finding a lack of wilfulness in such circumstances and desiring not to "burden" the exercise of Fifth Amendment rights. *Campbell v. Gerrans, supra, Alioto v. Holtzman,* 320 F.Supp. 256 (E.D.Wis.1970), *cf.*

*Jones v. Christopher,* 466 F.Supp. 213 (D.Kan.1979).

Several cases are fairly close to this one factually. In *Thomas v. United States,* 531 F.2d 746 (5th Cir. 1976), the taxpayer was arrested on state gambling charges. Thereafter the I.R.S. prepared a jeopardy assessment and collected part of it by seizure. The taxpayer filed an action for refund; the government counterclaimed. The government next filed interrogatories which the taxpayer refused to answer on Fifth Amendment grounds. The government moved for dismissal and summary judgment. The district court granted the motion, but the United States Court of Appeals for the Fifth Circuit reversed, stating that to allow the government to obtain dismissal of "every suit for wagering tax refund by every taxpayer who invokes his Fifth Amendment right may be akin to forfeiture." *Id.,* at 749. The court suggested the procedure set forth in *Shaffer v. United States,* 528 F.2d 920 (4th Cir. 1975), and *Iannelli v. Long,* 487 F.2d 317 (3rd Cir.), *cert. denied,* 414 U.S. 1040, 94 S.Ct. 541, 38 L.Ed.2d 330 (1973), (a stay of further proceedings until the government obtains immunity for the taxpayer or until the criminal statute of limitations runs) and remanded to the district court.

■ The procedures set forth in *Thomas, Shaffer* and *Iannelli* are not available to me here. The government cannot secure a meaningful guarantee of immunity for plaintiffs because it is state, not federal, prosecution they fear. Moreover, I cannot defer these proceedings until the state statute of limitations runs because it has already been tolled by the institution of criminal proceedings. Likewise, I do not believe it advisable to wait until those proceedings have concluded to proceed with this suit because there is no way to find when that might be. I conclude that *no sanction should be applied.* To do so would place an impermissible burden on plaintiffs' exercise of their Fifth Amendment right.

■ The government argues that by coming into court to challenge the assessment, plaintiffs "waived" their Fifth Amendment rights, citing *Awtry v. United States,* 27 F.R.D. 399 (S.D.N.Y.1961), *Henrik Mannerfrid v. Teegarden,* 23 F.R.D. 173 (S.D.N.Y.1959) and *Independent Productions Corp. v. Loew's, Inc.,* 22 F.R.D. 266, 276–278 (S.D.N.Y.1958). This is clearly not true with respect to the government's counterclaim. Moreover, the waiver notion has been roundly criticized. At 8 Wright & Miller, Federal Practice and Procedure: Civil § 2018, the waiver doctrine is described as "inconceivable" (145 & *n.* 33).

It is obvious, however, that by refusing to testify, plaintiffs will hurt their claim because they will be deprived of whatever benefit their own evidence might provide. *Id.,* at 149. Moreover, though I have not yet resolved this question, the government may be able to draw an adverse inference from plaintiffs' refusal to testify. *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). Finally, I will exercise care to prevent plaintiffs from turning the Fifth Amendment into an offensive tactic at trial by surprising the government with testimony concerning matters as to which the privilege was claimed during discovery. 8 Wright & Miller, *supra,* at 149; *Duffy v. Currier,* 291 F.Supp. 810, 815 (D.Minn.1968).

An order consistent with this opinion is entered herewith.