Fred B. BLACK, Jr., Appellant

v.

SHERATON CORPORATION OF
AMERICA et al.

No. 75–2034.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 1, 1976.
Decided Aug. 22, 1977.

See also 184 U.S.App.D.C. ——, 564
F.2d 531.

Samuel M. Bradley, Washington, D. C., for appellant. Gerald S. Rourke and Edward P. Morgan, Washington, D. C., were also on the brief for appellant.

Neil R. Peterson, Atty., Dept. of Justice, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., and John J. Farley, III, Atty., Dept. of Justice, Washington, D. C., were on the brief for United States of America as amicus curiae.

Peter R. Sherman, Washington, D. C., with whom Alan L. Seifert, Washington, D. C., was on the brief for appellees, Wash-

ington Sheraton Corp. and Sheraton Corp. of America.

Before LEVENTHAL, ROBINSON and WILKEY, Circuit Judges.

Opinion for the Court filed by LEVENTHAL, Circuit Judge.

LEVENTHAL, Circuit Judge:

In 1963, the FBI conducted an illegal eavesdropping operation through a microphone put in the wall of the suite of Fred B. Black in the Sheraton Carlton Hotel in Washington, D. C. In this lawsuit, Black sues the Sheraton corporations (Sheraton)[1] for compensatory and punitive damages.

Our opinion in *Black v. United States*, decided this day, involving his damage action against the government, presents further background information.

Black's complaint against the Sheraton defendants contends that they, through their agents or employees, had been involved in the eavesdropping, and in the alternative that they were negligent in not preventing or discovering it. The district court granted summary judgment for the defendants.

The principal issue on this appeal is whether the district court unfairly limited the breadth of plaintiff's discovery by denying discovery of testimony and documents tending to reveal the identities of persons who may have assisted the FBI with the eavesdropping.

## A

Prior to summary judgment, plaintiff engaged in extensive discovery. Plaintiff deposed John D. Bowen, who was assistant general manager of the hotel during the relevant period of time and later general manager, and Henry de Rooze, a subsequent general manager. Plaintiff also served two extensive sets of interrogatories on the Sheraton defendants regarding, *inter alia*, the knowledge and participation of their employees in the actions alleged in the

---

1. The two corporations which owned and operated the Hotel during the relevant period, namely, Sheraton Corporation of America and the Washington Sheraton Corporation.

Complaint. The Sheraton defendants answered both sets under oath on behalf of some sixty employees, including all of the Sheraton employees at the time of the interrogatories who also had been employees at the time of the acts alleged in the complaint. The defendants also supplied the plaintiff with the name, last known address, and position of each former employee at the time of the eavesdropping who was not employed by the Sheraton defendants at the time of the interrogatories. Plaintiff's counsel acknowledges having investigated some of these individuals.

From all of this discovery, and from the depositions of the responsible FBI agents, there emerged no evidence of the hotel's complicity in the eavesdropping operation. An FBI agent checked into the hotel under an assumed name, and from a suite adjacent to Black's, FBI agents drilled a hole into the common wall for the microphone, which was not visible. The hotel management treated the FBI occupants like other guests, asking them to move down the hall when their suite was needed for a prior reservation. There was no evidence of the negligence of the hotel management in not preventing or discovering the operation, and there was no evidence that participation, if any, of their employees in the operation, was authorized, ratified or approved.

Plaintiff contends, however, that the district court erroneously limited his attempts to discover from the FBI agents the possible participation of any hotel employees. During the deposition of Special Agent Pennypacker, who was in charge of the FBI investigation of Black, several of plaintiff's questions met with an invocation of informer's privilege.[2] Among them was a question which asked whether Pennypacker had "any contacts with people employed by the Sheraton or in the hotel." Pennypacker refused to answer on the basis of a previous statement "that the Attorney General has instructed [him] not to answer any questions which would tend to identify confidential informants."

Plaintiff moved to compel an answer. In response, the government submitted affidavits from the Attorney General, from the Assistant to the Director of the FBI, and from Special Agent Pennypacker, stating that a compelled answer would tend to reveal the identity of an FBI informant and would be harmful in developing other FBI informants. The district court also ordered all FBI documents relating to the confidential informants produced for an *in camera* inspection.

The district court rejected the motion to compel in a reported opinion. *Black v. Sheraton Corp.*, 47 F.R.D. 263 (D.D.C.1969). Judge Sirica ruled that the informer's privilege could apply to persons who cooperate with or assist a law enforcement agency on a confidential basis as well as to those who supply information. "Rather than to limit the class to whom the privilege is generally applicable", the court reasoned, "the better approach is to weigh the nature of the informer's role in determining whether disclosure is appropriate under the standards established by the *Roviaro* [353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639] decision." 47 F.R.D. at 265. The district court ruled that the FBI contacts involved here were informers within the accepted legal meaning of that word. Proceeding to balance the plaintiff's interest in disclosure against potential harms, the district court found that because the plaintiff could prosecute the parallel civil suit against the United States, his only interest in discovering the identities of the informants was to obtain punitive damage against the hotel. Weighing this interest, which it viewed as "minimal," against the public interest in preserving the anonymity of those who cooperate on a confidential basis with law enforcement authorities, the district court concluded that

---

**2.** Informer's privilege was invoked in response to inquiries whether the investigation of Black resulted from a lead obtained in Las Vegas, whether the investigation resulted from information obtained by eavesdropping in Miami, whether Pennypacker had learned from prior investigations that Black was a representative of gambling interests in Las Vegas, and whether Pennypacker had information indicating that there were individuals in Washington receiving funds from Las Vegas gambling interests.

further testimony should not be compelled. The district court examined *in camera* the documents sought by the plaintiff and concluded that these were also covered by the informer's privilege. We denied interlocutory review.[3]

Plaintiff argues error by the district court in the interlocutory ruling (Judge Sirica) refusing to compel disclosure, and in the ensuing ruling (Judge Richey) granting summary judgment to Sheraton and failing to draw an adverse inference from the government's refusal to disclose its informants.

■ In our view, the district court did not act improperly, as plaintiff argues, when it conducted an *in camera* examination of FBI documents in determining the existence and scope of the informer's privilege. As we discuss more fully in *Black v. United States*, the *in camera* inspection is a valuable technique for protecting the confidentiality of government documents while verifying a claim of privilege. We ordered such an *in camera* examination in *Westinghouse Electric Corp. v. City of Burlington*, 122 U.S.App.D.C. 65, 73, 351 F.2d 762, 770 (1965), noting that "[d]ocuments which are claimed to be privileged should normally be produced for inspection by the judge *in camera*." Other courts have approved *in camera* examination of the informer himself. *United States v. Jackson*, 384 F.2d 825 (3d Cir. 1967), *cert. denied*, 392 U.S. 932, 933, 88 S.Ct. 2292, 20 L.Ed.2d 1390 (1968).

A claim of informer's privilege presents the judiciary with a classic problem: "[t]he court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect." *United States v. Reynolds*, 345 U.S. 1, 8, 73 S.Ct. 528, 532, 97 L.Ed. 727 (1953). An *in camera* examination is an appropriate means of resolving this dilemma.

## B

Plaintiff contends that "in the absence of any factual showing concerning the role of the 'informer' in this case, it must be presumed that what the persons connected with the hotel did was to take part or assist in the installation, operation or concealment of the electronic listening device used to eavesdrop upon Black's conversations." Reply Brief at 9. Plaintiff then argues that the informer's privilege is limited to "persons who furnish information of violations of law to officers charged with enforcement of that law"[4] and does not include persons who assist law enforcement authorities in some other way.

The first answer is that the informant in this case did, in fact, provide information to law enforcement personnel. The affidavit submitted by Special Agent Pennypacker stated: "The informant in question was requested by me to obtain and did obtain certain types of information pertaining to Fred B. Black, Jr. . . ." We have verified this assertion through our own *in camera* inspection of the documents from the FBI file.

■ However, the district court did not rely on that fact. Drawing on Judge Sirica's excellent opinion, and on subsequent authority, we approve the district court's ruling that the "informer's" privilege may be claimed as to persons who provide assistance to police on a confidential basis other than by providing information.

In *United States v. Bell*, 165 U.S.App. D.C. 146, 154 n.43, 506 F.2d 207, 215 n.43 (1974), this court stated:

> [I]t is not unusual for informants to cooperate physically as well as informationally in criminal investigations, . . . and the reason underlying the privilege

3. The district court certified its decision for interlocutory appeal. This court initially accepted the appeal, but after oral argument dismissed it on the ground that permission to take interlocutory appeal had been "improvidently granted." Nos. 23, 542, May 12, 1970. The Supreme Court denied certiorari, 403 U.S. 912, 91 S.Ct. 2208, 29 L.Ed.2d 689 (1971).

4. The language is taken from *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957).

of nondisclosure hardly distinguishes the two kinds of activities. . . . Nor have the courts made any such distinction.

These observations may have been dicta in the context of *Bell*, but they reflect sound doctrine. As long as there is assistance with an expectation of confidentiality, whether or not it is limited to provision of information, disclosure of the identity of the cooperating citizen may unfairly defeat his expectation of anonymity and effectively destroy his utility in other law enforcement efforts. Disclosure may discourage other persons from providing assistance to the police.

Our views are consistent with the available case law. "The scope of the privilege is limited by its underlying purpose." *Roviaro v. United States*, 353 U.S. 53, 60, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). The Supreme Court defined that purpose broadly: "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." *Id.* at 59, 77 S.Ct. at 627. As the Court noted:

> The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

*Id.* But this explanation was not intended to limit application of the privilege. Indeed, in the same paragraph the Court cited *In re Quarles and Butler*, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080 (1895), in which the Court gave a broad explanation of the privilege:

> It is the duty and the right, not only of every peace officer of the United States, but of every citizen, to assist in prosecuting, and in securing the punishment of any breach of the peace of the United States. It is the right, as well as the duty of every citizen, when called upon by the proper officer, to act as part of the *posse comitatus* in upholding the laws of his country. It is likewise his right and his duty to communicate to the executive officers any information which he has of the commission of an offense against those laws; and such information, given by a private citizen, is a privileged and confidential communication.

158 U.S. at 535, 15 S.Ct. at 960. Consistent with this broad definition of the citizen's role, the courts of appeals have treated as informers those persons whose principal function was to provide a key and directions to the police, *see Wilson v. United States*, 59 F.2d 390 (3rd Cir. 1932), or to engage the defendant in certain transactions, *see, e. g., Gilmore v. United States*, 256 F.2d 565 (5th Cir. 1958); *United States v. Conforti*, 200 F.2d 365 (7th Cir. 1952), *cert. denied*, 345 U.S. 925, 73 S.Ct. 782, 97 L.Ed. 1356 (1953). We are not persuaded by plaintiff's citations for the contrary proposition.[5]

■ Plaintiff argues that even if the informer's privilege generally applies to persons who assist the police, it should not be put at the disposal of those who participate in police misconduct, for no public policy is served by encouraging citizens to assist in official misconduct. This argument has some merit, for we would not want the privilege to create a sanctuary of anonymity for those who conspire with the police to violate the constitutional or personal rights of others. However, the citizen requested to help the police may not always know—or be able to find out—whether the police action is fully consistent with law. Thus

5. *Morss v. Forbes*, 24 N.J. 341, 132 A.2d 1 (1957), held that the common law privilege has no applicability to persons who undertake to tap wires in accordance with their employment. That holding is not applicable to the facts of this case.

In *Howard v. Allgood*, 272 F.Supp. 381, 384–85 (E.D.La.1967), *aff'd*, 402 F.2d 795 (5th Cir. 1968), the court held that the defendant had not been prejudiced by the refusal of the police to disclose the identity of a person who verified that the defendant was at home prior to his arrest. The court's statement that the undisclosed individual was "not an informer insofar as the crime or any element thereof was concerned" came within a discussion of the prejudice suffered and was not, as far as we can discern, intended to limit the applicability of the informer's privilege.

we agree with the district court that the better approach to this problem is not to limit the scope of the privilege, but to take into account the citizen's awareness, if any, that the police were engaged in wrongful conduct, in deciding whether the privilege precludes disclosure, in balancing benefits and harms from disclosure.

### C

In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court held that an informer's claim to anonymity did not always prevail over competing interests:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

353 U.S. at 62, 77 S.Ct. at 628.

In *Westinghouse Electric Corp. v. City of Burlington*, 122 U.S.App.D.C. 65, 351 F.2d 762 (1965), this court applied the approach of *Roviaro*—a balancing of particular harms and benefits—to civil as well as criminal cases. 122 U.S.App.D.C. at 71–73; 351 F.2d at 768–70.

The district court sought to weigh the interest of plaintiff Black in disclosure against the public interest in confidentiality. It found that the "sole affirmative interest" furthered by disclosure was the possibility of obtaining punitive damages against the hotel (since compensatory damages would be available in the suit against the United States). The district court recognized that a recovery of punitive damages might "discourage private individuals from joining with the government in tortious conduct," 47 F.R.D. at 271. On the whole, Judge Sirica viewed the plaintiff's interest in discovery as "minimal."

On the other side of the balance, the district court weighed the government's continuing need to encourage the assistance of private individuals in law enforcement efforts. The district court grasped plaintiff's argument that "there was no danger of retaliation" in this particular case, but referred to our *Westinghouse* decision for the principle that "the privilege exists for the benefit of the general public, not for the benefit of the particular informer involved." 47 F.R.D. at 272, *quoting* 122 U.S. App.D.C. at 71; 351 F.2d at 768. After consideration of these and other factors, and an *in camera* inspection of the documents, the district court concluded that the balance did not favor disclosure in the circumstances of this case.

■ We agree with the conclusion of the district court. We have considered plaintiff's interest in recovering punitive damages, the ample opportunities for discovery already provided, the nature of the informer's role, his awareness, if any, of the nature of the FBI activities, the possibility of reprisal, and the public interest in preserving the anonymity of cooperating citizens.

Particularly significant in this calculus of concerns is the weakness of plaintiff's interest in obtaining discovery. Plaintiff's lawsuit against the United States provides a solvent defendant and one whose agents were primarily, if not wholly, responsible for the wrongdoing. Even assuming for purposes of argument that the undisclosed individual was an employee of Sheraton and had some connection with the eavesdropping operation, the plaintiff has presented no facts tending to prove corporate participation in or approval of the hypothesized employee action. This would be necessary for punitive damages against the corporation, under *Woodard v. City Stores Co.*, 334 A.2d 189 (DCCA 1975).

### D

Judge Richey's judgment was sound both in adopting the ruling of Judge Sirica, and in integrating that ruling into a summary judgment giving complete relief to Shera-

ton defendants. Plaintiff contends that even if the government is privileged to withhold the identity of the informer, plaintiff is entitled to an adverse inference from the nondisclosure to the effect that a Sheraton employee participated in the eavesdropping. This inference, plaintiff argues, is sufficient to resist Sheratons' motion for summary judgment.

We are dubious that an adverse inference can be drawn from a fully justified assertion of a privilege. The imposition of such a burden on those who invoke a privilege may discourage its exercise and thereby undermine the policies it was designed to serve.[6]

■ For this case, however, it suffices to resist an inference against the Sheraton defendants that it is not they but the government that is asserting the privilege. In *International Union (UAW) v. NLRB*, 148 U.S.App.D.C. 305, 314, 459 F.2d 1329, 1338 (1972), we explained the adverse inference rule:

> The theory behind the rule is that, all other things being equal, a party will of his own volition introduce the strongest evidence available to prove his case. If evidence within the party's control would in fact strengthen his case, he can be expected to introduce it even if it is not subpoenaed. Conversely, if such evidence is not introduced, it may be inferred that the evidence is unfavorable to the party suppressing it.

In this case it is clear that the Sheraton defendants have no control over the evidence not produced. The hotel (owner and management) has no right to assert or waive the privilege; it has no special relationship to or influence over the government; the hotel does not even know the identity of the informer or the contents of the withheld documents. It would be irra-

tional and unfair to draw an adverse inference against Sheraton from the government's assertion of privilege.

\* \* \* \* \* \*

Plaintiff has failed to demonstrate a genuine factual issue as to either the involvement or negligence of the hotel[7] with respect to the eavesdropping. The judgment of the district court is

*Affirmed.*

---

**6.** The Supreme Court has held that adverse comment on the failure of a defendant to take the stand violates his privilege against self-incrimination "by making its assertion costly." *Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). *See generally* Cleary, *McCormick's Handbook of the Law of Evidence* § 76 (2d ed. 1972) ("best solution is to

recognize only privileges which are soundly based in policy and to accord those privileges the fullest protection," including foreclosure of adverse comment or inferences).

**7.** Judge Richey's opinion on the negligence issue.