Ivette **RODRIGUEZ**

v.

**CITY OF SPRINGFIELD, et al.**

**Civ. A. No. 88–0063–F.**

United States District Court,
D. Massachusetts.

July 21, 1989.

---

David P. Hoose, Springfield, Mass., for plaintiff.

Edward M. Pikula, Harry Carroll, Eugene J. Mulcahy, Law Dept., Springfield, Mass., for defendants.

*MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTIONS TO COMPEL ANSWERS TO INTERROGATORIES*

MICHAEL A. PONSOR, United States Magistrate.

These motions to compel present the court with the vexed question of whether a plaintiff in a civil rights action can compel a defendant police officer to produce the identity of a confidential informant, where the informant's confidences purportedly provided the basis for the allegedly unlawful search of the plaintiff's home. Resolution of this issue requires balancing of the plaintiff's interest in making a fair presentation of her case against the defendants' interest in protecting investigative sources and preserving the safety of cooperating individuals.

The facts as alleged by the plaintiff are as follows. On April 17, 1987 defendant Martin A. Bryant, an officer of the Springfield Police Department, submitted an application for a search warrant to the clerk of the Springfield District Court. The application was supported by Bryant's affidavit which averred that Bryant, an experienced narcotics investigator, had received information recently from an unnamed reliable informant to the effect that "a Puerto Rican male called Anon and his girlfriend Maria have been dealing cocaine from their apartment 3 Grove Street." The affidavit describes the informant as reliable and indicates that his information has led to several arrests and convictions. The informant, according to Bryant, wished to remain anonymous out of fear for himself and his family.

The affidavit further states that the officer met with the informant earlier in the day on April 17, 1987, at which time the informant stated that he had been to 3 Grove Street and had observed "Maria" dealing cocaine to people. The officer arranged through the informant to make a controlled purchase of cocaine from 3 Grove Street. The informant performed this task and returned with a plastic bag containing a white powder which field tested positive for cocaine. The circumstances of the buy were described in some detail, along with a description of "Maria" and "Anon." The specific apartment was described as well. *See* Exhibit A to Defendant City of Springfield's Opposition to Plaintiff's Motion to Compel.

Based upon this, a warrant was obtained and, at approximately 9:40 p.m. on April 17, 1987, while plaintiff was away from her apartment, members of the Springfield Police Department broke into and searched the premises. "Anon" and "Maria" were not found, nor were any narcotics or narcotics paraphernalia located. Some cash was taken from the apartment by the police, but promptly returned to the plaintiff. Some degree of damage was done to the apartment during the course of the search.

At her deposition the plaintiff revealed that, some months previously, a man called "Hernan" and a woman named "Maria Santana" did live in her apartment. In fact, she indicated that mail addressed to them continued from time to time to be delivered to her address. There is some hearsay information to the effect that "Hernan" and "Maria" did deal drugs from the plaintiff's apartment in the past. It is undisputed that the immediate area is known for the presence of drug dealers.

Plaintiff recognizes that the defendants' negligent damage to her property during the course of the search does not present

an actionable claim in itself pursuant to 42 U.S.C. § 1983. *See Decker v. Hillsborough County Attorneys Office*, 845 F.2d 17 (1st Cir.1988). *See also Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). What she does object to is the more fundamental violation of her substantive constitutional rights, i.e., the invasion of her home in violation of the Fourth Amendment. She contends that the search was performed without probable cause.

Plaintiff's complaint names the City of Springfield, the chief of police, the captain in charge of the Crime Prevention Bureau, Officer Bryant and "John Doe"—the anonymous informant who supplied the information contained in Bryant's affidavit. Counts are asserted for violation of 42 U.S.C. § 1983, violation of Mass.Gen.Laws ch. 12, § 11I, violation of ch. 258 and for common law conversion and intentional inflection of emotional distress.[1]

Plaintiff has filed a motion to strike and compel answers to interrogatories by the defendant City of Springfield seeking an answer to Interrogatory No. 2, "Please provide the full name and address of the informant, John Doe." Plaintiff also seeks a compelled answer to Interrogatory No. 1 directed to defendant Bryant, which states: "Please list all cases in which you have used the informant John Doe to provide information including the date and whether or not an arrest and criminal conviction resulted." [2]

▪ The motion to compel with regard to Interrogatory No. 1 directed to Officer Bryant may be easily disposed of. In a supplemental answer, defendant has provided thirteen dates, addresses and names of persons, relating to "raids" conducted based upon information provided by the John Doe in question here. It emerged at oral argument on this motion to compel that the names listed were arrestees apprehended during the course of these raids. The only information lacking in response to the interrogatory is whether actual criminal convictions resulted as a result of the raids. Since the affidavit in support of the warrant application specifically mentions that the informant here provided information leading not only to arrests but convictions, the information sought is relevant to the subject matter of this litigation and likely to lead to the discovery of admissible evidence. The defendant is therefore ordered to provide plaintiff's counsel, within thirty (30) days of the date of this order, with an indication, with regard to each of the thirteen dates, as to whether convictions ultimately resulted. The motion to compel as to Bryant's Interrogatory No. 1 is therefore ALLOWED to this extent and is otherwise DENIED.

▪ The interrogatory directed to the City of Springfield presents a stickier problem. Defendants mention, without pressing, the objection that the city itself does not have the information with regard to the informant's identity, since this is possessed only by the defendant officer. Obviously, this objection is ephemeral, since the city has an obligation to obtain responsive information from agents under its control such as Officer Bryant.

▪ Beyond this, it is manifest that, in the ordinary civil case, the disclosure of John Doe's identity and his subsequent deposition would occur as a matter of course. He is, to say the least, a person "having knowledge of ... discoverable matter." Fed.R.Civ.P. 26(b)(1). One of plaintiff's central allegations is that the information provided by Doe was false, or was deliberately reported as false by defendant Bryant in his affidavit. Plaintiff's counsel even suggests the possibility that Doe may be a fiction.[3]

---

1. The amended complaint contains Counts I and II and Counts IV, V and VI. There is no Count III.

2. Interrogatory No. 2 to defendant Bryant was originally the subject of a motion to compel, but a supplemental answer has resolved the problem.

3. Well-publicized, recent allegations of police misconduct in the Boston area offer evidence that officers do sometimes create fictitious in-

The presence of the municipality and two supervisory officers as defendants in this case offers a further justification for disclosure of the informant's identity. The plaintiff will bear a heavy burden to demonstrate the existence of some custom or policy justifying a favorable verdict against these higher-echelon defendants. The informant's evidence may provide some proof of a course of action involving abuse either of this informant specifically or of confidential cooperating individuals generally.

Moreover, Doe's importance to the plaintiff goes beyond his status as a witness. Plaintiff wishes to name Doe as a party defendant, operating under color of state law through his conspiracy with his official co-defendants. Ordinarily, the court would immediately require the disclosure to plaintiff of such a potential co-defendant.

A final consideration also bears in favor of some disclosure. Defendants have already indicated an intention to file a motion for summary judgment at the close of discovery. Based upon past experience, the court assumes that at least one of the bases for the motion for summary judgment will be the qualified immunity of the defendants. Plaintiff will bear a particularly heavy burden in opposing the motion for summary judgment on this ground.

In *Krohn v. United States,* 742 F.2d 24 (1st Cir.1984), the Court of Appeals found that a police officer swearing out a warrant affidavit was not entitled to absolute immunity. However, in determining whether the defendant would enjoy qualified immunity, the court stated, "[w]e read the [Supreme Court's] strong condemnation of insubstantial suits against Government officers as calling for application of the principle earlier voiced in *Franks v. Delaware* [438 U.S. 154, at 171, 98 S.Ct. 2674, at 2684, 57 L.Ed.2d 667 (1978) ]." *Krohn* at 31.

In order to defeat a motion for summary judgment, or to impose upon the defendant the burdens of pretrial discovery, a plaintiff must show more than "a mere desire to cross-examine" but must furnish "[a]ffidavits or sworn or otherwise reliable statements of witnesses." Alternatively, but with a much higher burden than is borne by the plaintiff who opposes an ordinary summary judgment motion, a plaintiff may seek permission for discovery, or avoid summary judgment, by making a persuasive showing that affirmative evidence would be available, and giving a valid excuse for non-production. To hold less would defeat the entire purpose of freeing government officials from having to defend insubstantial suits.

*Id.* at 31–32. *See also Perlman v. City of Chicago,* 801 F.2d 262, 264 (7th Cir.1986).[4]

The core of plaintiff's case is that the affidavit contained deliberate falsehoods, or was drafted with a reckless disregard for the truth. It is difficult to imagine how this plaintiff could hope to make the substantial showing necessary in a "false affidavit" case without at least some access to the confidential informant. The plaintiff herself was not involved in the preparations for the search, or present at the time of the search itself. She can only deny, as she does here, that the target individuals were present, and the target activity took place, in her home. One can assume, on the other hand, that the officer's testimony will be largely consistent with his affidavit. Unless officers are to be, as a practical matter, entirely insulated from any civil rights actions arising from illegal searches conducted as a result of information purportedly received from a confidential informant, it would seem some discovery must be permitted.

Fed.R.Civ.P. 56(f). This court finds that plaintiff has made a sufficient threshold showing to justify some discovery regarding the informant. A contrary decision would slam the door on any civil rights suits growing out of unconstitutional searches based on information obtained from a confidential informant.

---

formants, whose supposed information is offered to justify the issuance of a warrant.

**4.** In this case no threshold motion for summary judgment has been filed by defendants. Even if one were filed, the court would be thrown back on the question of whether some discovery of the informant should be allowed to give plaintiff a fair opportunity to oppose the motion.

It is worth noting further that the conduct of the officer here, if the plaintiff is to be believed, touches the heart of the Fourth Amendment, the "right of the people to be secure in their ... houses...." The risk of an improper invasion of this most sacred zone of privacy is heightened, not decreased, where a confidential informant is involved. As counsel for the defendant forthrightly admitted, informants themselves are often denizens of the criminal world; in some cases, they are drug addicted themselves. Informants may have many motives for misleading the police, and even the most conscientious officer may be tempted to wink at the improprieties of an informant. If the court is going to be honest about the realities of law enforcement in this area, the risk of abuse must be confronted. The informant's privilege may not be used "to create a sanctuary of anonymity for those who conspire with the police to violate the constitutional or personal rights of others." *Black v. Sheraton Corp. of America*, 564 F.2d 550, 554 (D.C.Cir.1977).

The seminal case in this area is *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), holding that the informant's privilege is not absolute. While the Court established no fixed rule regarding disclosure, it indicated some of the criteria to be weighed in balancing the public interest against the individual's right to prepare his case. The court stated:

> Where the disclosure of an informer's identity ... is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.

*Id.* at 60–61, 77 S.Ct. at 627–28.

Where, as here, the informant was an active participant in the events underlying the lawsuit, the balance is tipped toward disclosure. *Holman v. Cayce*, 873 F.2d 944, 946 (6th Cir.1989).

In *Hampden v. Hanrahan*, 600 F.2d 600 (7th Cir.1979), *rev'd. on other grounds* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), the Court of Appeals, in remanding a civil rights action for a new trial criticized the trial judge's refusal to order the disclosure of an informant's identity. The court stated:

> The assertion of informer's privilege by a law enforcement official defending against a civil suit for damages based on his own alleged official misconduct should be scrutinized closely.

*Id.* at 638.

Although usually encountered in criminal cases, the balancing test set forth in *Roviaro* regarding disclosure of an informant applies equally to civil cases. 8 Wright & Miller, § 2019, at 156 (1970). *See also Black v. Sheraton Corp. of America*, 564 F.2d 550, 553–556 (D.C.Cir.1977).

While the plaintiff's position is strong, there are countervailing considerations. The risk to the informant, and the disruption of investigative sources, must be considered. Moreover, although the standard for disclosure is probably the same, "consideration of the circumstances involved in civil litigation will usually mean that the privilege is less likely to give way in a civil action." *Holman v. Cayce*, 873 F.2d at 946–47. As Wright & Miller state, "civil cases in which disclosure of an informer's identity has been required are few indeed while there are many cases in which disclosure has been refused." 8 Wright & Miller at 156–57.

The Court of Appeals in *Holman* recently reversed a District Court's ruling in holding a police office in contempt for refusal to disclose, even *in camera*, an informant's identity, finding the disclosure not warranted on the facts of that case. The difficulties in dealing with an informant in this context have prompted one commentator to conclude that "it might appear that the informer's privilege/police perjury problem presents an insoluble dilemma." 1 LaFave, *Search and Seizure*, § 3.3(g) at 707 (1987). To untangle the snarl of competing interests, LaFave suggests the technique of an *in camera* proceeding. *Id.* at 707–711.

Although this approach has its deficiencies both for the defendant and the plaintiff, it offers itself as the fairest and most expeditious method for balancing the parties' competing interests. It is suggested

in decisions of the Courts of Appeals. *See In re United States*, 565 F.2d 19, 23 (2nd Cir.1977). In *Black*, the D.C. Circuit stated that "an *in camera* examination is an appropriate means of resolving this dilemma." 564 F.2d at 553. In deciding on this approach the court specifically finds that the detriment to the defendants and to the public occasioned by the procedure is outweighed by the plaintiff's interest in making a fair presentation of her case.

The court will adopt the structure used by Magistrate Weisberg in *Johnson v. Perry*, No. 86–C–969 (N.D.Ill.E.D. Jan. 21, 1987).[5]

The procedure will be as follows: (1) within ten (10) days of the date of this memorandum the court will issue an order to defendants' counsel *only*, requiring counsel to produce the defendant Bryant, along with the informant whose information was used in drafting the affidavit to secure to search warrant, at a specific date and time; (2) on or before August 4, 1989, plaintiff's counsel will submit to this court, in writing, suggested questions to be asked by the court to Officer Bryant regarding the informant's identity or to the informant himself on any relevant subject; (3) a transcript will be made of the *in camera* examination and sealed; (4) a summary report as to the existence of the informant and as to the communications made by the informant to the police—but not revealing the informant's identity—will be drafted by the court and distributed to all parties. All necessary precautions will be taken to assure that the anonymity of the informant is protected. Nothing in this procedure will limit the plaintiff's right to depose the defendant Bryant, except that no questions may be asked of him tending to disclose the identity of the informant.

This procedure will have several advantages. It will virtually insure, except in the event of an unbelievably extravagant ruse, the existence of an actual informant. It will permit some, admittedly limited, examination as to possible inconsistencies between the actual facts and what was told to the officer, and between what was told to the officer and what was reported in the affidavit. This approach is not as good, from plaintiff's point of view, as a full blown deposition of the informant and, further, will not permit the plaintiff to name the informant as a defendant.[6] From the defendants' point of view some thinning of the informant's protective shell will occur. This is obviously not a procedure to be followed in every case involving a Fourth Amendment violation and an informant. It has been tailored, with as much subtlety as the court can muster, to the peculiar circumstances of this specific fact situation.

In conclusion, plaintiff's motion to compel is ALLOWED, to the extent set forth above and is otherwise DENIED.

It is So Ordered.

Appendix A

FOUND DOCUMENT

Citation

Not Reported in F.Supp.

1987 WL 5683 (N.D.Ill.)

Database        Mode
DCTU        P

Wanda JOHNSON, et al., Plaintiffs,

v.

Sgt. Ronald PERRY, et al., Defendants.

No. 86 C 969.

United States District Court,
N.D. Illinois, E.D.

Jan. 21, 1987.

Leroy A. Garr & Associates, Ltd., Chicago, Ill., for plaintiffs.

---

**5.** This unpublished opinion is available at 1987 W.L. 5683. A copy of the memorandum is appended. Footnote 2 of Magistrate Weisberg's memorandum indicates that his order was the target of an objection taken to Judge Aspen. Based on conversations directly with Magistrate Weisberg, the court has learned that this objection was later overruled and the *in camera* proceeding went forward.

**6.** As a practical matter, the current defendants, if found liable, are as capable as the informant of paying any damage award. Almost certainly they are more capable. A verdict against John Doe, but in favor of all other defendants, would not lie.

Richard T. Ryan, Flynn, Murphy & Ryan, Chicago, Ill., for defendants.

## MEMORANDUM RE ORDER FOR IN CAMERA HEARING

BERNARD WEISBERG, United States Magistrate.

At a status hearing on January 6, 1987 this court ruled on the objection of defendant Gallivan to plaintiff's supplemental interrogatory by ordering an in camera hearing for reasons stated in open court. This Memorandum will briefly explain that ruling.

Plaintiff's four count complaint brought under 42 U.S.C. § 1983 alleges that on or about March 28, 1985 defendants, who are Evanston police officers, and others entered an apartment at 1723 Emerson in Evanston, Illinois and conducted a search of the premises. Paragraphs 12 and 13 of Count I allege that defendants had no legal justification to enter and search said premises and that plaintiffs were deprived of their right to be free from unreasonable searches and seizures in violation of the Fourth and Fourteenth Amendments of the United States Constitution. Defendants' answer denies those allegations. In addition defendants filed on June 27, 1986 their first affirmative defense alleging that on March 25, 1985 a search warrant was obtained for the premises on the 1st floor of 1723 Emerson Street, Evanston, Illinois, from Judge Harold W. Sullivan of the Circuit Court of Cook County, Illinois, and that a competent police officer in defendants' situation could have reasonably believed that service of that warrant was lawful.

The complaint for search warrant (the "affidavit") dated March 25, 1985 sworn to by defendant Gallivan states that an unidentified reliable informant advised Detective Gallivan on March 24, 1985 that one Tommie Southall, a/k/a Mack Stoney, residing in the first floor of 1723 Emerson Street, Evanston, Illinois, was selling cocaine, that the informant stated he had last purchased cocaine from Tommie Southall on March 23, 1985 and that on March 24,

1985 that informant made a controlled purchase of cocaine with pre-recorded Evanston police funds under the observation of Detective Gallivan in the building at 1723 Emerson Street.

Plaintiffs assert that Tommie Southall did not reside at 1723 Emerson Street and that at the time of the raid no contraband was seized, no arrests were made, and Tommie Southall was not found on the premises.

Plaintiffs have propounded the following supplemental interrogatory:

1. The name, address, phone number, name of employer, employer's address and phone number of person referred to in the Complaint for search [sic] warrant previously produced as "reliable informant".

On November 14, 1986, defendant Gallivan filed the following objection to that interrogatory:

There is no pleading or evidence that would require the disclosure of the identity of the informant. The defendant presently is using the informant to make controlled purchases of drugs, in the continuing investigation of the sale of illegal drugs.

On November 14, 1986, Judge Aspen recommended that this case be referred to the undersigned to rule on the objection to plaintiffs' supplemental interrogatory, supervise remaining discovery and the preparation of the joint pretrial order.

Plaintiffs argue that under *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) and *Hampton v. Hanrahan,* 600 F.2d 600 (7th Circuit 1979) they are entitled to disclosure of the informant's identity. They cite *Roviaro's* conclusion that when disclosure of an informant's identity "is essential to a fair determination of a cause, the privilege must give way." 353 U.S. at 60–61, 77 S.Ct. at 627–28. In *Hampton* the court ordered disclosure of the informant's identity where the search warrant involved was challenged in a civil rights action. The Seventh Circuit said, "[t]he assertion of informer's privilege by a law enforcement official defending against a civil suit for damages based upon his own alleged official misconduct should be scrutinized closely." 600 F.2d at 638.

Defendants distinguish Hampton on the ground that there a substantial showing was made that the alleged informant did not in fact exist. Defendants argue that the governing rule is found in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). *Franks* held that in order to obtain an evidentiary hearing to determine whether a search warrant was obtained by a material false statement, a defendant in a criminal case must make a substantial preliminary showing that a false statement necessary to the finding of probable cause was included in the warrant affidavit intentionally or with reckless disregard for the truth. If such a hearing is held, perjury or reckless disregard is established and the remainder of the affidavit is insufficient, then *Franks* concluded, the warrant must be voided and the fruits of the search excluded. 438 U.S. at 155–56, 171–72, 98 S.Ct. at 2676–77, 2684–85. Defendants argue that plaintiffs have failed to show or allege the kinds of facts which are necessary before a hearing is required under Franks.

In Roviaro the informant was a material witness on the question of guilt or innocence and the court required disclosure of the informant's identity. Here plaintiffs have attacked defendant Gallivan's good faith in obtaining the warrant. They contend that his affidavit was based solely on information allegedly provided by the informant and if Detective Gallivan did not in fact have an informant or the informant did not provide the information stated in Gallivan's affidavit or the informant was unreliable, then the validity of the warrant and defendants' related defenses are called into serious question.

On December 4, 1986, following the observation in *Hampton*, 600 F.2d at 639, this court indicated that it was prepared to overrule the objection to plaintiffs' interrogatory and suggested that the parties explore the terms of a negotiated protective order. When defendants' counsel took the position that a protective order would not provide an acceptable solution, the court suggested that defendants file a reply memorandum.

After further consideration, this court reached the following conclusions which were stated in summary form in open court on January 6, 1987:

(1) This case is governed by *Roviaro* rather than *Franks*. The question here is not whether evidence seized in violation of the Fourth Amendment should be excluded in a criminal case, (an issue collateral to the question of guilt or innocence) but whether one or more defendants are liable in damages under Count I. The determination of that question may turn on whether the warrant was improperly obtained and, if so, whether as to each defendant he participated in or knew of the impropriety. Here, as in *Roviaro*, the question is whether information about the informant is essential to a fair determination of the cause.

(2) Concern about possible dangers to the informant and the informant's usefulness to the police justify use of an in camera procedure which in recent years has been used and approved by several courts, both state and federal, and recommended by the American Law Institute. See the discussion and authorities cited in 1 La-Fave, Search and Seizure, § 3.3(g) (1978), particularly the discussion of *People v. Darden*, 34 N.Y.2d 177, 356 N.Y.S.2d 582, 313 N.E.2d 49 (1974) and other authorities cited at pp. 582–586.[1] Under that procedure, the informant is made available for interrogation before the judge in camera, with the prosecutor (in this case defendants' counsel) present but not plaintiffs or their counsel. Testimony is taken with the transcript sealed to be available to the appellate courts. A summary report as to the existence of the informer and as to the communications made by the informer to the police is made to all parties. All reasonable precautions are taken to assure that the anonymity of the informer is protected. As the New York Court of Appeals observed in *Darden*, this procedure protects against the possibility that the informer did not exist or that information received from the informer was not fairly

---

1. See also LaFave, op. cit. § 4.4.

represented to the court which approved the warrant. At the same time legitimate concerns about protecting the anonymity of the informer are respected. 356 N.Y.S.2d at 585, 313 N.E.2d at 52.

On January 6, 1987 the court referred counsel to the above portion of Professor LaFave's discussion and the authorities there cited. The court stated that it would hold an in camera hearing at which it would examine defendant Gallivan and the confidential informant in accordance with the above procedure. The court advised counsel that defendant Gallivan was directed to appear at that hearing together with his confidential informant. The court further stated that notice of the time and place of that hearing would be given only to defendants' counsel and plaintiffs' counsel were invited to submit to the court any questions which they wished to have asked at the in camera hearing.[2]

---

**2.** On January 6, 1987 the court entered a sealed order which was sent to defendants' attorney but not to plaintiffs' attorney setting the time and place for the in camera hearing and directing defendant Gallivan to appear with the unidentified informant. On January 16, 1987 the court entered an order stating that since defendants have filed objections with Judge Aspen regarding the holding of the in camera hearing, this court's order dated January 6, 1987 setting the time and place of that hearing is vacated until Judge Aspen rules on the defendants' ob-

jection. The court notes that in his Objections to Finding filed January 15, 1987, at p. 2, defendant Gallivan disclosed the time and place set for the in camera hearing by the court's order of January 6, 1987. The purpose of sealing that order was of course to protect the anonymity of the informant. If defendant Gallivan's objection is overruled and another in camera hearing is ordered, defendant's attorney is directed not to disclose any information about the time and place of that hearing in any unsealed document filed in this case.